UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MARGARET JOHNSON,** *et al.***,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| v. } | |
| } | Case No.: 2:24-cv-01307-MHH |
| **PROGRESSIVE CASUALTY** } | |
| **INSURANCE CO.,** } | |
| } | |
| **Defendant.** } | |
| } | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Margaret Johnson and Tyre Keith sued Progressive Casualty Insurance Co. in state court. (Doc. 1-1, pp. 42–48). Progressive removed the case to this Court. (Doc. 1). The plaintiffs have filed a motion to remand. (Doc. 5). This opinion resolves the plaintiffs' motion.

\*\*\*

The plaintiffs' claims arise from a car accident in which a non-party driver rear-ended the plaintiffs' vehicle. (Doc. 1-1, pp. 44-45, ¶¶ 6–9).[1] Accepting the

---

[1] Ms. Johnson sustained injuries and received treatment in the emergency room. She also has received treatment from an orthopedist and from a physical therapist. (Doc. 1-1, pp. 13, 14, 54, ¶¶ 13, 16). Both plaintiffs allege that they have sustained permanent injuries; have experienced significant pain and suffering, mental anguish, and diminished enjoyment of life; and have incurred past and future medical expenses and out-of-pocket expenses. (Doc. 1-1, pp. 12, 17, ¶¶ 9, 25–26).

allegations in Ms. Johnson's complaint as true for purposes of this order, at the time of the accident, the driver who rear-ended the plaintiffs' car did not have insurance. (Doc. 1-1, p. 14, ¶ 14; Doc. 1-1, p. 45, ¶¶ 8, 12). Progressive insured the plaintiffs' vehicle. (Doc. 1-1, p. 12, ¶ 6; Doc. 1-1, p. 47, ¶ 17). The Progressive policy contains $50,000.00 in uninsured or underinsured coverage per plaintiff. (*See* Doc. 1-1, pp. 15, 58, ¶ 18).[2]

Following the accident, Ms. Johnson filed a claim with Progressive. A Progressive agent called Ms. Johnson and offered her $2,000.00 for her "pain and suffering" stemming from the accident. (Doc. 1-1, pp. 12–13, ¶¶ 10–11). The agent asked Ms. Johnson to sign a form to release the money. (Doc. 1-1, p. 14, ¶ 15). Unbeknownst to Ms. Johnson, this "Uninsured Motorist Release and Trust Agreement" required Ms. Johnson to limit her recovery to $15,000.00 in any UM or UIM claim against Progressive, to assign Progressive a right of recovery against other responsible persons or organizations, and to obtain Progressive's consent before prosecuting an action against a responsible person or organization. (Doc. 1-1, p. 14, ¶ 15). Progressive's agent told Ms. Johnson that the form "did not have 'anything to do with' [Ms. Johnson's] claim against [the uninsured driver] or 'anything else,' and was just 'something from [Progressive] for pain and suffering,

---

[2] The record does not contain a copy of the policy.

2

and that she was merely signing a form so that the funds could be 'released' and given to her."  (Doc. 1-1, p. 16, ¶ 18).  "[H]aving been led to believe [the form] was a legal formality to make sure the $2,000.00 check was sent to the proper person," Ms. Johnson signed the document.  (Doc. 1-1, p. 15, ¶ 17).

On August 13, 2024, Ms. Johnson and Mr. Keith sued Progressive for UIM benefits.  (Doc. 1-1, pp. 42–47).  On August 26, 2024, Ms. Johnson and Mr. Keith amended their complaint.  (Doc. 1-1, pp. 9–32).  In addition to the claim for UIM benefits, Ms. Johnson asserted claims against Progressive for breach of contract, fraud, promissory fraud, fraudulent inducement, fraudulent suppression, fraudulent deceit, fraudulent misrepresentation, and bad faith relating to Ms. Johnson's interaction with Progressive's agent and Progressive's alleged effort to trick Ms. Johnson into limiting her UIM claim to $15,000.  (Doc. 1-1, pp. 16–29, ¶¶ 23–82).[3]  For their UIM claim, the plaintiffs request Progressive's "full, stacked" UIM benefits.  (Doc. 1-1, p. 18).  For her tort claims, Ms. Johnson seeks an award of general and compensatory damages and special and punitive damages plus interest.  (*See, e.g.*, Doc. 1-1, pp. 19–29).

On September 25, 2024, Progressive removed the state-court action to this

---

[3] Ms. Johnson alleges that Progressive is liable for its agent's actions under the *respondeat superior* doctrine and agency principles.  (Doc. 1-1, pp. 29–31, ¶¶ 83–90).  Progressive contends that Ms. Johnson already has settled her UIM claim pursuant to the release she signed.  (Doc. 1-1, p. 16, ¶ 19).

federal court.  (Doc. 1).  Progressive has attached to its notice of removal three letters from the plaintiffs' attorneys.  (Doc. 1-1, pp. 53–58).  In the first, Ms. Johnson demanded payment of the $50,000.00 UIM policy limit and medical benefits available under the policy.  (Doc. 1-1, pp. 53, 55).  In the third letter, Mr. Keith demanded the $50,000.00 UIM coverage limit.  (Doc. 1-1, p. 58).

In the second letter, Ms. Johnson demanded the $50,000.00 UIM coverage limit and stated that failure to tender the limit would lead her to amend her complaint to assert breach of contract, fraud, and bad faith claims as direct claims against Progressive.  (Doc. 1-1, pp. 56–57).[4]  Ms. Johnson stated that when Progressive contacted her about the $2,000.00 payment, she had retained an attorney to represent her and had informed the Progressive agent that she was working with an attorney.  (Doc. 1-1, p. 56).  The Progressive agent responded that the call and offer did not have "anything" to do with her obtaining legal representation.  (Doc. 1-1, p. 56) (internal quotation marks omitted).  The agent did not discuss the extent of Ms. Johnson's injuries and did not inform Ms. Johnson that the non-party driver involved in the accident was not insured.  (Doc. 1-1, p. 56).  Ms. Johnson's attorney wrote:

> I am not sure what is more disturbing; that Progressive offered my client a fraction of her total uninsured motorist benefits 20 days after an accident, without confirming that she had finished treatment and

---

[4] Emails exchanged before removal between Ms. Johnson's attorney and Progressive's attorney reiterate Ms. Johnson's $50,000.00 demand.  (Doc. 4).

4

> would not incur additional medical costs or disclosing that she had more benefits available, that Progressive knowingly withheld the fact that the other driver was uninsured when it tricked Ms. Johnson into limiting her recovery from the only insurance she had available, that Progressive deceived its own insured into limiting her recovery for its own benefit, or the fact that Progressive did all of this *after my client informed them that she had retained an attorney*.  It certainly appears that this fact did not deter Progressive at all; in fact, it seems to have galvanized Progressive's agent to try even harder to procure a release, to the point of lying to my client about the purpose of her uninsured motorist coverage, which we both know is not just "for pain and suffering." That there was nary a mention of my client's medical expenses or concern for her physical recovery is even more indicative of Progressive's nefarious, fraudulent motives in trying to profit at the expense of its insured.

(Doc. 1-1, pp. 56–57) (italics in letter).

***

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  As such, the "removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction." *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 n.1 (11th Cir. 2012) (citation omitted).  Given the "significant federalism concerns" raised by removal jurisdiction, federal courts must "construe removal statutes strictly." *City of Vestavia Hills*, 676 F.3d at 1313 (internal quotation marks and quotation omitted).  Courts should resolve doubts about jurisdiction "in favor of

remand to state court." *City of Vestavia Hills*, 676 F.3d at 1313 (internal quotation marks and quotation omitted).

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446(b)(3), Progressive removed this case to federal court. (Doc. 1, pp. 5, 6–7, ¶¶ 15, 23–27). Section 1441(a) provides:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). Section 1332 gives district courts subject matter jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." § 1332(a)(1). Ms. Johnson and Mr. Keith challenge Progressive's assertion that the amount in controversy in this action exceeds $75,000.00. (Doc. 5; Doc. 8).[5]

Ms. Johnson and Mr. Keith did not include in their amended complaint a specific claim for damages. (*See* Doc. 1-1, pp. 9–32). "[W]here damages are unspecified, the removing party bears the burden of establishing the jurisdictional

---

[5] Progressive has satisfied the citizenship requirement in § 1332. (*See* Doc. 1, p. 5, ¶¶ 16–19; Doc. 1-1, p. 11, ¶¶ 2–4).

6

amount by a preponderance of the evidence." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1208–09 (11th Cir. 2007) (citations omitted), *overruled on other grounds by, Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744 (11th Cir. 2010)). A "removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka*, 608 F.3d at 754 (citations omitted). Because plaintiffs' claims cannot be aggregated "to reach the jurisdictional threshold," in actions with more than one plaintiff, a removing defendant must demonstrate that the claims of at least one plaintiff exceed $75,000 for a federal court to exercise jurisdiction. *Lowery*, 483 F.3d at 1198 n.31 (citations omitted).[6] A district court may rely on "judicial experience and common sense" when determining whether a claim satisfies the amount-in-controversy requirements. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1064 (11th Cir. 2010).

Progressive argues that the amount in controversy as to Ms. Johnson's claims

---

[6] The amount in controversy with respect to Mr. Keith's claim does not exceed $75,000.00. Mr. Keith asserts only a UIM claim, and he has demanded $50,000.00 from Progressive. (*See* Doc. 1-1, pp. 9–32, 58). If the Court has subject matter jurisdiction over Ms. Johnson's claims, then the Court may exercise jurisdiction over Mr. Keith's claim under 28 U.S.C. § 1367. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005) (concluding that if one plaintiff's claims meet amount-in-controversy threshold, a district court must look to 28 U.S.C. § 1367 to determine whether it may exercise supplemental jurisdiction over the claims of a plaintiff that do not meet amount in controversy threshold). Section 1367 provides that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Mr. Keith's claim stems from the "same case or controversy" as Ms. Johnson's claims, so the Court may exercise jurisdiction over his claims if the Court may exercise jurisdiction over Ms. Johnson's claims.

in her amended complaint exceeds $75,000.  (Doc. 1, p. 7, ¶ 26; Doc. 7, p. 4, ¶ 11). Progressive is correct; the amount in controversy as to Ms. Johnson's contract and tort claims easily exceeds $75,000.  *Pretka*, 608 F.3d at 754; *Roe*, 613 F.3d at 1064. When Ms. Johnson and Mr. Keith first sued Progressive, they sought only UIM damages, limiting their maximum recovery to $50,000 plus interest.  Therefore, the original complaint for UIM benefits was not removable.  When Ms. Johnson and Mr. Keith amended their complaint, and Ms. Johnson added tort claims against Progressive, she demanded not only compensatory damages but also punitive damages.  (Doc. 1-1, pp. 19–31).  Under Alabama law, a plaintiff may recover punitive damages when defendants "consciously or deliberately engage[] in oppression, fraud, wantonness, or malice with regard to the plaintiff."  ALA. CODE § 6-11-20(a).[7]  When a plaintiff establishes entitlement to punitive damages, the punitive damages award shall not exceed three times the plaintiff's compensatory damages or $500,000.00, "whichever is greater."  ALA. CODE § 6-11-21(a).

Because $50,000 is in controversy on Ms. Johnson's UIM claim, the same amount of compensatory loss is in controversy on her breach of contract and tort claims.  She can recover compensation only once for Progressive's failure to pay

---

[7] Federal courts sitting in diversity jurisdiction apply state substantive law, so the Court applies Alabama substantive law in this opinion.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

the maximum available UIM benefit to her. *See Ex parte Barnett*, 978 So. 2d 729, 732 (Ala. 2007) (citations omitted). Therefore, the maximum amount of compensatory damages that Ms. Johnson may recover is $50,000 plus interest. Even a 1:1 recovery of punitive damages under Ms. Johnson's fraud claims or bad faith claim would produce a total recovery of $100,000, well over the $75,000 jurisdictional threshold.[8] Because at least $100,000 is in controversy as to Ms. Johnson in the amended complaint, Progressive properly removed this action to federal court after Ms. Johnson amended the complaint to add tort claims and a corresponding request for compensatory and punitive damages.

*\*\*\**

Accordingly, the Court denies the plaintiffs' motion to remand. The Clerk of Court shall please TERM Doc. 5.

---

[8] "Generally, the purpose of punitive damages is not to compensate the plaintiff but to punish the wrongdoer and to deter the wrongdoer and others from committing similar wrongs in the future." *Springhill Hosps., Inc. v. West*, 388 So. 3d 648, 672 (Ala. 2023) (internal quotation marks, quotation, and citations omitted). "A defendant seeking to remove because of a claim for punitive damages 'must affirmatively establish jurisdiction by proving jurisdictional facts that ma[ke] it *possible*' that punitive damages are in play." *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1248 (11th Cir. 2012) (italics and brackets in *Frederick*) (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (11th Cir. 2008)). Per Ms. Johnson's attorney's letter to Progressive describing the circumstances surrounding the release that Progressive's agent presented to Ms. Johnson, Ms. Johnson has alleged facts that, if proven, make an award of punitive damages very possible. (Doc. 1-1, pp. 56–57).

9

**DONE** and **ORDERED** this June 16, 2025.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

10